TEXAS BUILDERS, Mark O'Brien, Gerard O'Brien, and Marvin Oates, Petitioners,

v.

James A. KELLER d/b/a James A. Keller Realtors, Respondent.

No. 95–0056.

Supreme Court of Texas.

Aug. 16, 1996.

Rehearing Overruled Sept. 19, 1996.

Jeffrey S. Alley, Joseph L. Hood, Jr., David R. Pierce, El Paso, for Petitioners.

Brenda J. Norton, Phillip C. Bowen, El Paso, for Respondent.

## OPINION

PER CURIAM.

Respondent, a real estate broker, sued petitioner, a commercial lessor, for breach of contract and fraud after petitioner refused to pay respondent a leasing commission. After a bench trial, the trial court rendered judgment for respondent for actual and punitive damages, and the court of appeals affirmed. 888 S.W.2d 586. We hold that respondent cannot recover for breach of contract because there is no written agreement satisfying the Real Estate License Act. *See* TEX.REV.CIV. STAT. art. 6573a, § 20(b). We further hold that there is no evidence that respondent suffered compensable damages from any fraud committed by petitioner. We accordingly reverse the judgment of the court of appeals and render judgment that the broker take nothing.

In 1984, Texas Builders, a partnership, leased commercial property in El Paso known as "12058 Rojas" to Atari, Inc. This leased space, consisting of 112,500 square feet, was part of a larger building also containing the address "12050 Rojas," consisting of 100,000 square feet. After Atari was acquired by Warner Communications, Inc., it sought to extricate itself from the lease. To this end, Atari entered into a written listing agreement with James Keller, an El Paso broker, to find a sublessee, and also began negotiating a potential buyout directly with Texas Builders.

During this same time period, Texas Builders sought to lease part of *12050 Rojas,* an area of the building separate from Atari's space. In January 1988, it sent a solicitation letter to several realtors, including Keller, providing in pertinent part as follows:

Dear Broker:

The following is a list of our buildings which have space available for immediate occupancy.

. . .

| | Available |
|---|---|
| 12050 Rojas | 58,333 square feet. |

. . .

Please note that we have extremely competitive rates and the highest quality service. Texas Builders pays 6% commission for all signed leases.

Enclosed is information about our company and projects.

We look forward to doing business with you.

This letter was signed by Wayne Windle, Texas Builder's property manager. Notably, the area identified as available for lease at 12050 Rojas was less than the total area of 100,000 square feet.

Keller subsequently showed 12058 Rojas (the Atari space) to Quickie Manufacturing Corporation, a company seeking to relocate to El Paso. Negotiating through Keller, Quickie offered to sublease part of Atari's space. Although Atari rejected this offer, it suggested that Keller present Quickie's offer directly to Texas Builders, which Keller did. Keller contends that Texas Builders delayed acting on Quickie's offer and misrepresented the reason for delay. Matt Koch, a realtor working for Keller, testified that Wayne Windle told him that Gerard O'Brien, a Texas Builder partner, had to make the leasing decision, but was too ill to be disturbed. Windle similarly testified that he was unable to reach O'Brien and could not obtain a response to the offer. Texas Builder's telephone logs and call records, however, reflect that Windle was communicating regularly with O'Brien at this time.

Meanwhile, Texas Builders, without Keller's knowledge, began negotiating directly with Quickie. In August 1988, Texas Builders leased 47,560 square feet to Quickie, 30,893 of which was located at 12058 Rojas and 16,667 of which was located at 12050 Rojas. Quickie subsequently expanded its lease to include all of 12058 Rojas.

Upon learning of this transaction, Keller demanded a six percent commission. When Texas Builders refused, Keller sued it, its partners, Atari and Warner for breach of contract, fraud, and civil conspiracy. After a bench trial, the trial court rendered findings that Texas Builders breached its contract with Keller and committed fraud regarding the Quickie transaction. The court rendered judgment against Texas Builders for $68,586 in accrued damages, representing six percent of Quickie's lease payments through the time of trial, and further imposed a constructive trust in Keller's favor on six percent of all future lease payments by Quickie.

Although the trial court also found that Warner breached a contract and committed fraud, and that it and Atari conspired with Texas Builders, the court did not assess any actual damages against Warner or Atari. The court did, however, impose $100,000 in punitive damages against all the defendants, jointly and severally.

The court of appeals affirmed the judgment only as to Texas Builders, holding that its January 1988 solicitation letter sufficiently evidenced a promise to pay Keller a six percent commission. The court of appeals also found legally and factually sufficient evidence to support the trial court's finding of fraud against Texas Builders. However, the court reversed that part of the judgment imposing a constructive trust on future lease payments, holding that no evidence existed of a special relationship justifying such a remedy. The court of appeals also found no evidence that Texas Builders joined with Warner or Atari to accomplish an unlawful purpose, and thus reversed the trial court's finding of civil conspiracy. The court vacated the joint and several punitive damage award as to Warner and Atari, as no actual damages had been assessed against these defendants. *See Nabours v. Longview Savings*

*& Loan Ass'n,* 700 S.W.2d 901, 904 (Tex. 1985) (punitive damages may not be awarded unless actual damages are found). However, the court affirmed the entire punitive award as to Texas Builders. Texas Builders sought review by this Court.

We first address Keller's breach of contract claim. A real estate broker may not sue for a commission unless the agreement is evidenced by a writing complying with the Real Estate License Act. This Act provides as follows:

> An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged or signed by a person lawfully authorized by him to sign it.

TEX.REV.CIV. STAT. art. 6573a, § 20(b). "Real estate" under the Act includes a leasehold. *Id.* § 2(1). To comply with the Act, the writing must furnish, either within itself or by reference to some other existing document, the means or data by which the real estate at issue may be identified. *See Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968). The sufficiency of the description is the same as that necessary to satisfy the Statute of Frauds. *Id.*

Keller relies on the solicitation letter sent by Texas Builders to it in January 1988, stating that Keller had 58,333 square feet available for lease at 12050 Rojas. We conclude that this letter does not describe the property to be leased with sufficient certainty to satisfy the Act.

A writing need not contain a metes and bounds property description to be enforceable; however, it must furnish the data to identify the property with reasonable certainty. *See Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972). Parol evidence may be used to explain or clarify the written agreement, but not to supply the essential terms. *Id.* at 541. For example, a contract that provides for sale of "my ranch of 2200 acres" is sufficient, where extrinsic evidence shows that the grantor owned one ranch, which

indeed contained 2200 acres. *See Jones v. Smith,* 231 S.W.2d 1003, 1004 (Tex.Civ. App.—Austin 1950, writ ref'd n.r.e.).

But we have long held that a contract providing for the sale or lease of an unidentified portion of a larger, identifiable tract is not sufficient. *See Morrow,* 477 S.W.2d at 540 ("north acreage ... out of the 145.8 acre tract of the Jefferson McGrew Survey No. 245"); *Matney v. Odom,* 147 Tex. 26, 210 S.W.2d 980, 982 (1948) ("four (4) acres out of the East end of a ten-acre block on the P. Chireno Survey ..."); *Greer v. Greer,* 144 Tex. 528, 191 S.W.2d 848, 850 (1946) ("70 acres of land, more or less, out of the A.N. McKnight Survey, Patent No. 736, Volume 3, Abstract No. 400"); *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703, 706 (1935) ("100 acres out of blocks eight and nine of the subdivision of Jose Maria Pineda survey ... Pat. 608, Vol. 2"); *Pfeiffer v. Lindsay,* 66 Tex. 123, 1 S.W. 264, 265 (1886) ("50 acres of land out of the J.M. Moss survey, situated in Montague county, Texas, abstract No. 462").

The property at 12050 Rojas contained 100,000 square feet. The solicitation letter sent by Texas Builders does not identify which 58,333 square foot component was available for lease. Moreover, although Quickie ultimately leased approximately 130,-000 square feet, only 16,667 was at 12050 Rojas, and there is no evidence that this area was part of the 58,333 square feet referred to in the solicitation letter. Because the solicitation letter does not identify the property with reasonable certainty, Keller cannot recover for breach of contract against Texas Builders.

We next address Keller's fraud claim. We hold that, even assuming that Texas Builders committed fraud, there is no evidence of resulting compensable damages. The only actual damages awarded by the trial court were for the brokerage commission Keller claimed it should have received from the Quickie lease. This is precisely the type of recovery that is barred by the Real Estate License Act. Keller cannot circumvent the requirements of the Act by claiming the lost commission as fraud damages. *See Weakly v. East,* 900 S.W.2d 755, 758 (Tex. App.—Corpus Christi 1995, writ denied);

*Cissne v. Robertson,* 782 S.W.2d 912, 918 (Tex.App.—Dallas 1989, writ denied). The trial court correctly failed to award damages for fraud separate from the lost commission, because there is indeed no evidence of such damages. Keller relies on his testimony that he had shown "seven or eight buildings" to Quickie and that he "very possibly" could have steered Quickie to one of these other locations had he known that Texas Builders would not deal with him. There is no evidence, however, of the rental value of these other properties, whether Keller had an enforceable commission agreement relating to them, or the amount of any enforceable commission. Under these circumstances, Keller cannot recover for fraud.

Because there is no basis on which to support the trial court's award of actual damages, the punitive damage award must also be reversed. We therefore do not reach the issue of whether the trial court erred in imposing joint and several punitive damage liability. *See* TEX. CIV. PRAC. & REM.CODE § 41.006.

Accordingly, we reverse the judgment of the court of appeals and render judgment that Keller take nothing.