NO. 07-01-0428-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 27, 2003
_____

LIMESTONE GROUP, INC.

Appellant

v.

SAI THONG, L.L.C.,

Appellee
_____

FROM THE 157TH DISTRICT COURT OF HARRIS COUNTY;

NO. 98-33467; HON. GEORGE HANKS, PRESIDING
_____

***Opinion***
_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

Before us is the appeal and cross appeal of Limestone Group, Inc. (Limestone) and Sai Thong, L.L.C. (Sai Thong), respectively. We affirm the judgment of the trial court.

***Background***

The dispute arises from an attempted conveyance of land. The parties initially executed an agreement under which Sai Thong agreed to sell Limestone a parcel of

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

property. Limestone apparently desired to develop this parcel, which desire attracted the attention of inhabitants who lived adjacent to it. Those inhabitants initiated suit to thwart either the sale of the land or Limestone's interest in developing it. Furthermore, this suit had the apparent effect of causing Sai Thong and Limestone to amend their initial agreement. Indeed, the parties modified it 11 times over the course of their relationship. So too did they fail to complete the transaction. This resulted in the two pursuing claims against each other.

Limestone sought specific performance of the accord. In turn, Sai Thong asked the trial court to declare that it did not have to convey the property because Limestone defaulted. The default involved its failure to pay $75,000 as earnest money by a specified date; the prospective buyer only delivered $25,000. Moreover, Limestone does not dispute that it failed to pay the entire sum.

Upon trial to the court, judgment was entered denying Limestone specific performance and ordering Sai Thong to pay its opponent damages equal to the amount of the earnest money actually delivered. So too did the court enter findings of fact and conclusions of law. Therein, it expressed that Limestone "was in breach of the Contract as amended as a result [of] its failure to deposit . . . on or before December 30, 1998, the $75,000.00 of Final Earnest Money." This breach "entitled Sai Thong to a declaratory judgment repudiating the Contract . . . ." Yet, the trial court also found that "Limestone had a reasonable expectation given the relationship between the parties and previous extensions that Sai Thong would give Limestone reasonable notice of the termination of the [neighbor's suit] and an opportunity . . . to tender the final earnest money before Sai Thong repudiated the Contract." "Sai Thong did not do either . . . prior to repudiating the

2

Contract," according to the trial court. The latter also held that awarding Sai Thong attorney's fees "under the circumstances of this matter," "would not be equitable or just." Both litigants then appealed.

### Limestone's Point

Via its appellant's brief, Limestone asserts one issue or point. It asks whether "the Buyer's failure to make a final deposit of earnest money preclude[d] the remedy of specific performance?" The prospective buyer says that it does not because its obligation to pay the earnest money was not a condition precedent to the formation of the contract. Nor was its failure to comply with the provision a material breach. We overrule the point for the following reasons.

First, no one argues that the contract never came into existence because Limestone failed to pay the earnest money. Indeed, all agree that the conduct of the parties resulted in the formation of a binding agreement. Moreover, it was one of the terms of that binding agreement which Sai Thong invoked to bar Limestone's demand for specific performance. And, logic dictates that it could not have invoked that provision if the contract never came into existence.

Second, the provision invoked by Sai Thong to defeat recovery by Limestone is found at paragraph 12(c) of the original agreement and states:

> If Purchaser shall not be in default hereunder and if Seller fails to consummate this Agreement for any reason, . . . the Earnest Money and any extension payment shall be immediately returned to Purchaser and Purchaser shall have the right to either (i) terminate this Agreement or (ii) enforce specific performance of Seller's obligation under this Agreement, as Purchaser's sole and exclusive remedies for Seller's default.

3

As can be seen, the contractual provision expressly addresses Limestone's right to specific performance. So too does it condition invocation of that right upon two criteria. One is that the Seller fails to perform while the other, and more important given the current dispute, is that the Purchaser (Limestone) not be in default under the accord. Thus, irrespective of whether or not the duty to pay the earnest money was a condition precedent to the formation of the agreement, it constituted a potential condition precedent to the invocation of the right to receive specific performance. Again, before Limestone could pursue that right, it "shall not be in default" under the agreement.

Next, the trial court found that Limestone indeed was in default because it did not pay the entire earnest money. No one disputes this. Instead, Limestone asserts that the default or breach was not material, and cites authority stating that the breach must be material before specific performance can be withheld. The two cases mentioned, *Hudson v. Wakefield*, 645 S.W.2d 427 (Tex. 1983) and *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223 (Tex. Civ. App.–Texarkana 1973, no writ), do indicate that only a material breach prevents one from pursuing specific performance. *Hudson v. Wakefield*, 645 S.W.2d at 430-431; *Cowman v. Allen Monuments, Inc.*, 500 S.W.2d at 226. Yet, neither involved an agreement that expressly addressed the right of specific performance; instead, the courts were merely orating upon general equitable principles related to the remedy. This distinction is of import for parties to an agreement may contractually specify the remedies available to redress its breach and, thereby, modify the legal and equitable remedies generally applicable. *See GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 256 (Tex. App.--Houston [1st Dist.] 1991, writ denied) (stating that parties to a contract may agree on remedies for breach and that the agreed remedy is exclusive).

And, that is what they did here. Again, they restricted Limestone's redress to two options, and the one pertaining to specific performance required that the purchaser not be in "default."

Next, in determining what the parties meant by "default," it is clear that we must afford the word its plain, everyday meaning. *See GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d at 256 (requiring that language in a contract be afforded its plain, grammatical meaning). And, at least one court has held that "in everyday usage" the term can mean "'omission,' 'failure,' or even 'breach.'" *Alaniz v. Yates Ford, Inc.*, 790 S.W.2d 38, 40 (Tex. App.--San Antonio 1990, no writ). This interpretation of the word comports with that afforded it by the dictionary; there, it is defined as the "failure" to do an act. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 950 (1976). Moreover, appended to none of these definitions are words of qualification requiring a certain measure or quantum of omission, failure, or breach before an omission, failure or breach can be a default.

Thus, because the plain meaning of the word connotes a mere failure, omission, or breach, we must read it in like vein when assessing what the parties meant by using it in their agreement.[2] And, in so reading the term, we eschew attempt to affix words of qualification or measure to it, such as substantial or material. In short, the parties omitted words from the contract modifying the degree of default needed. Because they did, we may not now incorporate them into the agreement and thereby change it. *See Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.--Amarillo 2000, no pet.)

_____

[2]Neither party argues that something other than what we have held the definition to be was intended.

5

(stating that the parties to the contract are the masters of their words and that we may not rewrite the contract to mean something that it does not because one party may now find the agreement distasteful).

Finally, and given our interpretation of "default," Limestone's failing or omitting to pay the entire earnest money as required by the contract was and is a default. Simply put, it did not perform an obligation required under the contract. Having so defaulted, the purchaser did not satisfy one of the conditions prerequisite to the invocation of its contractual right to specific performance. So, the trial court did not err in denying Limestone that relief.

### Sai Thong's Points

Next, through four issues, Sai Thong contends that the trial court erred in awarding Limestone damages and in denying it attorney's fees. We overrule them.

*Damages*

As to the matter of damages, they were improperly awarded, according to Sai Thong, because 1) there was no or insufficient evidence to support them and 2) Limestone did not plead for them. We disagree.

In its judgment, the trial court expressly "ordered, adjudged and decreed that Sai Thong . . . pay to Limestone . . . the sum of $25,000 as damages." In its findings of fact and conclusions of law accompanying the award, the $25,000 was described as the sum of earnest money that Limestone actually paid. That is, the trial court concluded that Sai Thong also breached the agreement by failing to give Limestone 1) reasonable notice of the end of the suit initiated by those who did not want development upon the parcel of land and 2) opportunity to "tender the final earnest money before" repudiating the contract.

6

Because Sai Thong failed in this regard, the trial court determined that ". . . Limestone's request for equitable relief should be granted and Sai Thong must return . . . the last earnest money payment in the amount of $25,000." So, while the trial court referred to the $25,000 sum as "damages," it is clear that it was merely ordering the return of the earnest money that had been paid. Furthermore, and upon our reading of the judgment as a whole, we conclude that the trial court so ordered it because Sai Thong too breached the agreement. *See Stettner Clinic, Inc. v. Burns*, 61 S.W.3d 16, 18-19 (Tex. App.--Amarillo 2000, no pet.) (holding that a judgment is construed like other written documents and that the intent of the court is determined by viewing the document as a whole). Therefore, the trial court implicitly invoked and applied the rule of law holding that a party to a contract cannot enforce it unless he shows that he has performed the obligations imposed upon him. *Carr v. Norstok Bldg Sys., Inc.*, 767 S.W.2d 936, 939 (Tex. App.--Beaumont 1989, no writ); *Acme Pest Control Co. v. Youngman*, 216 S.W.2d 259, 263 (Tex. Civ. App.--Waco 1948, no writ). Or, stated differently, one cannot enforce a contract he breached. *See Dobbins v Redden,* 785 S.W.2d 377, 378 (Tex. 1990). And, while the rule is normally applicable to dependent promises or indivisible contracts, *Acme Pest Control Co. v. Youngman*, 216 S.W.2d at 263, Sai Thong does not assert that the agreement at issue falls outside those categories.[3] Nor did Sai Thong proffer an issue expressly contesting

---

[3]This is significant because we rebuttably presume that all stipulations in a contract are dependent. *Acme Pest Control Co. v. Youngman*, 216 S.W.2d 259, 263 (Tex. Civ. App.--Waco 1948, no writ).

7

the determination that it also breached the contract.[4]  So, there is some evidence supporting the trial court's decision to order the return of the earnest money.

Finally, that Limestone may not have expressly requested damages matters not. Again, Sai Thong was the party seeking to retain the earnest money deposit per the terms of the contract.  It was the one who expressly placed before the trial court the issue of who was to keep it.  Since Sai Thong was not entitled to the sum, the trial court was entitled to order its return to the depositor.  And, we find no injustice or wrong in that.

*Attorney's Fees*

Next, Sai Thong argues that the trial court erred in denying it attorney's fees.  This was so because it was a "prevailing party" under the contract.  We again disagree for the following reason.

As evinced by its findings of fact and conclusions of law, the trial court held that "[u]nder the circumstances of this matter, an award of attorney's fees pursuant to the *Texas Civil Practice and Remedies Code Section 37.009* would not be equitable or just." (Emphasis added).  Sai Thong does not attack that specific finding on appeal.  Instead, it posits that it was entitled to recover attorney's fees under the terms of the contract, as alleged in its live pleading against Limestone.  Yet, recovery under the contract was not a matter addressed by the trial court in its findings of fact and conclusions of law.  Nor does the record indicate that the matter of recovering fees under the contract, as opposed to the

---

[4]Sai Thong does state under point four that "these conclusions [*i.e.* the finding that Sai Thong breached the agreement and was not entitled to attorney's fees under §37.009 of the Texas Civil Practice and Remedies Code] were inappropriate in light of the Contract. . . ."  It also asserts that they "were not supported by the evidence."  Nevertheless, neither explanation nor citation to authority accompanied these conclusions. Thus, they preserved nothing for review.  TEX. R. APP. P. 38.1(h); *In re Williams,* 998 S.W.2d 724, 730 (Tex. App.--Amarillo 1999, no pet.).

statute, was a topic broached in any request for additional findings of fact or conclusions of law. This is fatal since Sai Thong was obligated to request such additional findings and conclusions to preserve its complaint for review.

Simply put, if a trial court's original findings do not address a ground of recovery or a defense, then the party relying on that ground or defense must request additional findings in proper form. *Levine v. Maverick Cty. Water Control*, 884 S.W.2d 790, 796 (Tex. App.--San Antonio 1994, writ denied); *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 907-08 (Tex. App.--Houston [14th Dist.] 1991, writ denied); accord, *Smith v. Smith*, 22 S.W.3d 140, 150 (Tex. App--Houston [14th Dist.] 2000, no pet.) (noting that Mr. Smith had the duty to request additional findings of fact and conclusions of law in connection with the disproportionate division of the community or in connection with the trial court's calculation of the community portion). By failing to do so, one waives his complaint about the unmentioned ground or defense. *Smith v. Smith*, 22 S.W.3d at 150; *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d at 907-08. Given this, Sai Thong waived its contention that the trial court erred by not awarding it fees as a prevailing party *under the contract*, as opposed to the statute.

Having overruled all points of error or issues raised by all the parties, we affirm the judgment of the trial court.


Brian Quinn
Justice

9