# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==================================

## ON MOTION FOR REHEARING EN BANC

==================================

## NO. 03-07-00689-CV

**Crandall Medical Consulting Services, Inc., Appellant**

**v.**

**John A. Harrell, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
## NO. C2007-0109C, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

In reviewing the trial court's grant of summary judgment in favor of Harrell, the review of which should have been conducted under the well-established standards applied to summary judgments, the panel majority affirmed on grounds not asserted by Harrell's motion, erroneously shifted the burden of proof to the non-movant, and inappropriately made at least one finding of fact, essentially rewriting the contract to match Harrell's arguments, rather than leaving questions of the parties' intent for the fact-finder. The majority opinion ignores case law from the Texas Supreme Court and from this Court, including one opinion written by the authoring justice herself. Because I believe that the majority panel opinion, which will be precedent for the entire Court, *see* Tex. R. App. P. 41.1(a), 47 cmt. to 2002 change, made serious errors of law that require

reconsideration and correction, I dissent from the denial of CMC's motion for rehearing en banc and would join Justice Waldrop's dissent from the panel majority.

Under section 5 of the contract, Harrell was required to make an initial $2,000 earnest money deposit, followed by an additional $100 deposit several weeks later. The same section provided that "[i]f Buyer fails to timely deposit the earnest money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the earnest money and may exercise Seller's remedies under Paragraph 15." Paragraph 15 provided, "If Buyer fails to comply with this contract, *Buyer is in default* and Seller may: (1) terminate this contract . . . ." (Emphasis added.) The contract stated, "Time is of the essence in this contract. The parties require strict compliance with the times for performance." It is undisputed that Harrell did not make the second deposit. CMC terminated the contract pursuant to its termination provision, and Harrell sued for specific performance.

Harrell moved for a "traditional" summary judgment under rule 166a(a), stating as grounds that he had "performed *all of the obligations imposed upon him by the contract*, specifically, payment of the purchase price." (Emphasis added.) Thus, to be entitled to summary judgment, Harrell had to prove he had fully complied with the contract. *See* Tex. R. Civ. P. 166a(c) (movant must prove entitlement to judgment "on the issues expressly set out in the motion or in an answer or in any other response"). The trial court, however, granted summary judgment and specific performance in Harrell's favor, despite the fact that Harrell admits not having made one of the two required deposits.

Unbelievably, despite the trial court's error, the majority panel of this Court has gone out of its way to affirm the granting of specific performance, apparently forgetting that

2

Justice Patterson, the majority's author, acknowledged in *Roundville Partners, L.L.C. v. Jones* that when a would-be buyer seeks specific performance, before he "'asserts *any* rights under an escrow contract he must show that he has complied with the conditions of the escrow, or has offered to perform and was prevented without fault of his own.'" No. 03-00-00724-CV, 2001 Tex. App. LEXIS 4970, at *16 (Tex. App.—Austin July 26, 2001, no pet.) (not designated for publication) (quoting *Bell v. Rudd*, 191 S.W.2d 841, 844 (Tex. 1946)); *see also DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94 (Tex. 2008) (party seeking specific performance must prove "he was ready, willing, and able to timely perform his obligations under the contract" and that he "complied with his obligations under the contract"). Justice Patterson stated that to prevail on a motion for summary judgment for specific performance, the would-be buyers were "initially required to establish that they have complied with the conditions of the escrow contract or that they offered to perform and had been prevented by another from doing so." *Roundville Partners*, 2001 Tex. App. LEXIS 4970, at *17. She also stated that "when the parties have intended timeliness to be an essential aspect of any obligation, right, or estate created in the contract, we may not destroy that bargained-for stipulation, and . . . to do so would create a new contract with terms contrary to the original contract." *Id.* at *22-23 (citing *Wilson v. Klein*, 715 S.W.2d 814, 823 (Tex. App.—Austin 1986, writ ref'd n.r.e.)). In a later opinion dealing with the same parties, we held, "When time is of the essence in a contract, a party must perform or tender performance in strict compliance with the provisions of the contract and within the time prescribed in order to be entitled to specific performance." *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79 (Tex. App.—Austin 2003, pet. denied) (citing *Wilson*, 715 S.W.2d at 822).

Harrell did not make the second earnest money deposit that was required by the contract, which also required "strict compliance with the times for performance," and CMC asserted that the contract was terminated on January 3, 2007, when it sent Harrell a letter terminating the contract due to his failure to timely make the second deposit. Thus, it is clear that Harrell was not entitled to summary judgment on the grounds asserted in his motion. *See id.* Instead of correcting that error by the trial court, however, the majority ignores the issue and goes on to exceed the bounds of this Court's authority, making what amounts to a finding of fact by deciding that the second deposit was not a material element of Harrell's performance under the contract, even while acknowledging that materiality is generally a fact question. *See Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983) (whether payment of escrow by $1,500 check rather than $1,500 in cash was material breach of contract that would allow sellers to repudiate contract "is one of fact, to be determined by the trier of facts"); *Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 394 (Tex. App.—Texarkana 2003, pet. denied) ("Whether a party's breach of contract is so material as to render the contract unenforceable is a question of fact to be determined by the trier of fact."); *Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 333 (Tex. App.—Houston [1st Dist.] 1982, no writ) (whether act was material breach "was a question of fact for the jury").[1]

Compounding that error, the majority goes on to determine that CMC failed to plead and prove that Harrell's breach was material, never acknowledging that CMC was not seeking to

---

[1] *See also Lakeside Park, Inc. v. Dr. Pepper Bottling Co.*, 44 S.W.2d 1023, 1025 (Tex. Civ. App.—Fort Worth 1931, no writ) (under contract, both parties "had an option to terminate the contract under certain conditions, and the question of whether or not those conditions existed were questions of fact to be determined by the jury").

avoid its contractual obligations due to a "material breach" by Harrell. CMC asserted that it had terminated the contract pursuant to an explicit termination clause that did not require a material breach. The earnest money provision stated only that if Harrell failed to "timely deposit the earnest money," CMC could terminate the contract. Harrell did not make the second deposit as required by the contract. CMC alleged that it was contractually entitled to terminate for Harrell's failure to make both the required deposits, which was sufficient to defeat Harrell's motion for summary judgment. CMC was not required to plead and prove a material breach.

Next, in a further usurpation of the role of the finder of fact and without providing an explanation, the majority determines that the initial earnest money deposit was crucial to the contract but that the second contractually required deposit was irrelevant. The majority concludes that "the sentence in the earnest money provisions providing CMC the right to terminate for Harrell's failure to deposit 'the earnest money' did not allow CMC to terminate the Contract based on Harrell's failure to deposit the 'additional earnest money,'" but does not explain why the first sentence of the provision is binding on the parties while the second is not. The majority "interprets" the contract, saying (without explanation) that "[b]y the parties' express reference in the earnest money provisions to CMC's right to seek remedies under the default provisions if Harrell failed to deposit 'the earnest money,' the parties' intent was not to include this same remedy—remedies under the default provisions—as to the 'additional earnest money' of $100."

The majority states that it is interpreting the earnest-money provision and the "time is of the essence" clause as a matter of law and then proceeds to "interpret" elements of both clauses right out of the contract. The majority determines that CMC's interpretation "is inconsistent with

5

the contract as a whole" and "would modify the law of contracts and specific performance to allow CMC to terminate the Contract no matter how immaterial the breach."  Perhaps.  *But parties to a contract are entitled to do just that*.  "[P]arties to an agreement may contractually specify the remedies available to redress its breach and, thereby, modify the legal and equitable remedies generally applicable."  *Limestone Group, Inc. v. Sai Thong, L.L.C.*, 107 S.W.3d 793, 797 (Tex. App.—Amarillo 2003, no pet.); *see Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied) (parties may contractually consent to submit disputes to exclusive jurisdiction of another state); *Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252, 257 (Tex. App.—Corpus Christi 1993, writ denied) (parties may contract "to exempt one another from future liability for negligence so long as the agreement does not violate the constitution, a statute, or public policy"); *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 256 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (parties may agree through contract to exclusive remedy for breach and to limit warranty).  In spite of the above authority and the well-established rule that "[c]ourts cannot make new contracts between the parties, but must enforce the contracts as written," *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965), the majority panel opinion has done exactly that and has rewritten the contract in favor of Harrell, the movant for summary judgment.  Two justices of this Court have determined that the parties must not have meant what they contractually stated—that the parties did not really mean that Harrell had to make the second earnest money deposit and that, although the contract required "strict compliance with times for performance," strict compliance was not really required as to all performance under the contract.

6

There is no question that Harrell failed to timely deposit all of the earnest money he agreed to pay and that CMC exercised its right to terminate on that basis, and there is nothing in the contract to support the majority's strained finding of a distinction between "the earnest money" and "additional earnest money." The parties did not, for example, use capitalization or quotation marks to distinguish between "The Earnest Money" and "The Additional Earnest Money." They simply contracted that Harrell was required to make two separate deposits and that, if he "failed to timely deposit the earnest money," CMC could terminate. The contract does not make a distinction between the deposits, and the courts certainly should not rewrite the contract in a manner that they think provides a better outcome. We should give the contractual language its plain, ordinary meaning and construe the contract in accordance with the parties' agreement; we should not read language into the contract that was not included by the parties or impose our own determination of what the parties must have intended. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (when construing contract, courts' primary concern "is to ascertain the true intentions of the parties as expressed in the instrument" and "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless"; terms used in contract should be "given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense"); *Limestone Group*, 107 S.W.3d at 797 ("In short, the parties omitted words from the contract modifying the degree of default needed. Because they did, we may not now incorporate them into the agreement and thereby change it.").

The review of a summary judgment is one of the most basic and frequent exercises this Court is asked to perform, and yet, the panel majority has somehow turned the process upside

7

down in this case. Although it should no longer be necessary to remind ourselves that we must view the summary-judgment evidence in the light most favorable to the non-movant, resolving any doubts in favor of the non-movant and against the granting of summary judgment, *Dorsett*, 164 S.W.3d at 661, such a reminder apparently is necessary because the panel majority has completely disregarded these guiding rules and instead has bent over backwards to affirm the trial court, "interpreting" a contract in a manner that benefits the party who wrote it and who admits he breached the contract by failing to make one of two contractually required deposits. Because of the majority's blatant misapplication of the standard of review and basic contract law, I dissent to the denial of CMC's motion for en banc reconsideration. I would join Justice Waldrop's dissent to the original panel opinion.

_____

David Puryear,  Justice

Joined by Justices Pemberton and Waldrop

Filed:   May 18, 2009

8