

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

No. 02-18-00056-CV

GEORGE MANOR, Appellant

V.

JUDY IONE MANOR, Appellee

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV15-1444

Before Sudderth, C.J.; Kerr, J., and Gonzalez, J.[1]
Memorandum Opinion by Visiting Judge Ruben Gonzalez, Sitting by Assignment

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION ON REHEARING

Appellant George Manor filed a motion for rehearing of our October 17, 2019 memorandum opinion and judgment. We deny the motion but withdraw our prior opinion and substitute the following in its place. With the exception of a paragraph added to address one of George's arguments, our opinion otherwise remains unchanged.

This case arises from a land dispute between ex-spouses. In six issues, Appellant George Manor appeals the trial court's denial of his motion for traditional summary judgment on the affirmative defense of the statute of frauds and the trial court's grant of summary judgment in Appellee Judy Manor's favor on her claim for breach of contract. We affirm the trial court's judgment in both respects.

## Background

As part of their 2014 divorce, George and Judy divided their community interest in almost 300 acres of land situated in Parker County. The parties' decree awarded approximately 123 acres to Judy.[2] In 2015, the parties negotiated a sale by Judy of 32 acres of the divided land to George. On June 19, 2015, they executed a

---

[2]In a separate suit filed and decided after the parties entered into the contract at issue, the trial court found the decree ambiguous and resolved the ambiguity in George's favor. *In re Manor*, No. 07-16-00143-CV, 2018 WL 1415407, at *4 (Tex. App.—Amarillo Mar. 21, 2018, pet. denied) (mem. op.). In doing so, the division of the land was slightly altered. *Id.* As the parties do not dispute in the instant proceeding that Judy was awarded approximately 123 acres in the divorce, we will not dwell on the nuances of the division as addressed by our sister court in the separate proceeding.

Farm and Ranch Contract (hereinafter "the Contract") which described the subject land as: "The land situated in the county of Parker, Texas, described as follows: House and 32 acres out of 123+/- acres TR: BLK: SURV: TEXAS & PACIFIC R.R. or as described on attached exhibit, also known as 2300 Cox Road, Millsap, TX 76066." The Contract stated that an aerial photo was attached and was to be considered as part of the parties' agreement; in fact, a Google Earth photograph signed by both George and Judy and dated June 19, 2015, was attached to the Contract. We have attached the aerial photo as Exhibit A to this opinion. The Contract required a $35,000 earnest-money deposit by George and provided the following remedies in the event of default:

> **15. DEFAULT:** If [George] fails to comply with this contract, [George] will be in default, and [Judy] may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract.

The Contract also allowed for additional damages if any party "wrongfully" failed or refused to sign a release of the escrow money:

> **18. ESCROW:**

> > D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

3

The Contract set a closing date of July 6, 2015, and stated that if either party failed to close the sale by the closing date, "the non-defaulting party may exercise the remedies contained in Paragraph 15." The parties did not close on July 6, 2015. According to Judy, George repeatedly delayed the closing. In September 2015, Judy demanded release of the earnest money in lieu of specific performance; George refused to sign any such release and instead expressly directed the title company not to release the earnest money.

In November 2015, Judy sued George for breach of contract,[3] alleging fraud and malice on his part and seeking actual damages, exemplary damages, and attorney's fees. George filed a general denial and asserted a defense of the statute of frauds. Both parties moved for summary judgment—the trial court granted Judy's motion and denied George's. The parties agreed to the amount of actual damages to be awarded to Judy ($35,000) and agreed to try the issue of attorney's fees by affidavit and written submissions, after which the trial court awarded Judy $31,405 in attorney's fees. A final judgment reflecting the trial court's rulings was entered in February 2018. This appeal followed.

---

[3]Judy later amended her petition to add a claim for tortious interference with contract, which she nonsuited after winning summary judgment on her breach-of-contract claim. It is not relevant to this appeal.

**Discussion**

George brings six issues on appeal, divided into two sections. In his first set of issues, George appeals the trial court's denial of his motion for summary judgment because, in his view, the Contract is unenforceable because it does not satisfy the statute of frauds. In his second set of issues, he argues that even if the Contract is enforceable, we must reverse the trial court's order granting Judy's summary judgment motion and remand the cause to the trial court because Judy failed to establish her right to the $35,000 in earnest money as a matter of law.

## I. Standard of review applicable to traditional summary judgments

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless

reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). Uncontroverted evidence from an interested witness does nothing more than raise a fact issue unless it is clear, positive, and direct; otherwise credible and free from contradictions and inconsistencies; and could have been readily controverted. *Morrison v. Christie*, 266 S.W.3d 89, 92 (Tex. App.—Fort Worth 2008, no pet.) (citing Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997)).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

## II. George's statute-of-frauds affirmative defense

George's first four issues relate to the denial of his motion for summary judgment. They allege (1) that the Contract's property description does not satisfy the statute of frauds, (2) that the insufficient property description cannot be cured by affidavits and testimony, (3) that the insufficient property description cannot be cured by documents prepared after the Contract was signed, and (4) that Judy did not produce evidence to support the application of an exception to the statute of frauds. Because we hold that the property description is sufficient to satisfy the statute of frauds, we overrule George's first issue and do not reach his third and fourth issues. *See* Tex. R. App. P. 47.1. Because some parol evidence is properly considered in our analysis, *see Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996), we overrule George's second issue. We will address George's first and second issues together.

### A. Applicable law

George was entitled to summary judgment on his statute-of-frauds affirmative defense if he conclusively proved all the elements of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, George was required to present summary judgment evidence that established each element of the affirmative defense as a matter of law. *See Chau*, 254 S.W.3d at 455; *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

A contract for the sale of real estate is subject to the statute of frauds. Tex. Bus. & Com. Code Ann. § 26.01(b)(4). It must sufficiently describe the property

7

being sold, and the sufficiency of the description is a question of law. *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *Anderson Energy Corp. v. Dominion Okla. Tex. Expl. & Prod.*, 469 S.W.3d 280, 295 (Tex. App.—San Antonio 2015, no pet.). A real-estate contract sufficiently describes the subject property if enough information appears in the description, or in a document it refers to, for the property to be identified with reasonable certainty. *Davis v. Mueller*, 528 S.W.3d 97, 101 (Tex. 2017); *see also Butler v. Benefield*, 589 S.W.2d 778, 780 (Tex. App.—Dallas 1979, writ ref'd n.r.e.) ("The purpose of a description is to 'afford a means of identification,' not necessarily to identify." (quoting *Krueger v. W.K. Ewing Co.*, 139 S.W.2d 836, 839 (Tex. Civ. App.—El Paso 1940, no writ)). Texas courts have recognized that a property can be identified with reasonable certainty if the description identifies the general area of the land and contains information about the property's size, shape, and boundaries. *Ardmore, Inc. v. Rex Grp.*, 377 S.W.3d 45, 56 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

"If enough appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient." *Gates v. Asher*, 280 S.W.2d 247, 248–49 (Tex. 1955); *May v. Buck*, 375 S.W.3d 568, 574 (Tex. App.—Dallas 2012, no pet.). The trial court may consider evidence to determine whether "a person familiar with the area can locate the premises with reasonable certainty." *May*, 365 S.W.3d at 574 (citing *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 237 (Tex. App.—Dallas 2004, pet. denied)). In this respect, parol evidence may be

8

used to explain or clarify the written agreement but not to supply the essential terms. *Tex. Builders*, 928 S.W.2d at 481 (citing *Morrow v. Shotwell*, 477 S.W.2d 538, 541 (Tex. 1972)). For example, "a contract that provides for sale of 'my ranch of 2200 acres' is sufficient, where extrinsic evidence shows that the grantor owned one ranch, which indeed contained 2200 acres." *Id.* at 481–82.

## B. Application

We will address George's arguments in two sections. First, we will consider George's argument that the Contract's identification of the "attached exhibit" is ambiguous. Second, we will address his argument that the property description is insufficient even if we consider the aerial photo as part of the property description.

### 1. The aerial photo as the "attached exhibit"

George argues that there is no evidence that the "attached exhibit" as referred to in the Contract's written description is the aerial photo we have attached as Exhibit A. Essentially, George urges us to hold that the Contract's reference to an "attached exhibit" is ambiguous as a matter of law. We disagree and reject this contention.

In doing so, we keep in mind that our primary concern in construing a contract is to ascertain the parties' true intentions as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To do so, we are to "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* If the contract is so worded that it can be given a certain or definite legal meaning or interpretation, then as a

9

matter of law it is not ambiguous. *Id.* If, on the other hand, the contract's meaning is "uncertain *and* doubtful" or reasonably susceptible to more than one meaning, the contract is ambiguous. *Id.* (emphasis added).

With this in mind, we consider the provisions of the Contract. Paragraph 2.A., on the first page of the Contract, describes the land as the "[h]ouse and 32 acres out of 123+/- acres" in the "Texas & Pacific R R" survey, located at "2300 Cox Road, Millsap, TX 76066" in Parker County, and "as described on attached exhibit." On page eight of the Contract, two addendums are designated: an "[a]erial photo" and a mineral addendum. The parties do not dispute that the aerial photo we have attached as Exhibit A was attached to the Contract—through his affidavit attached to his second motion for traditional summary judgment, George authenticated a copy of the Contract with that photo attached. Despite this, George now argues that because the aerial photo is not explicitly labeled as the "attached exhibit," there is no evidence that it was intended to be the "attached exhibit" referred to in the property description in paragraph 2.A.

George's argument conflicts with the aforementioned rules of construction by asking us to find multiple provisions of the Contract meaningless. *See id.* We decline to do so—we must consider the Contract as a whole, including the attached aerial photo, and we must harmonize the provisions describing the property by incorporating the "attached exhibit" (the aerial photo) to supplement that description. *See id.*; *cf. In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding)

10

("Documents incorporated into a contract by reference become part of that contract."). We may also consider that both parties signed the aerial photo concurrently with the Contract itself. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding) (reciting that agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together). And finally, we can consider Judy's affidavit testimony stating that the aerial photo was attached to the Contract in order to identify the property.[4] In doing so, we are not supplying essential terms of the Contract but are instead using this parol evidence to explain and clarify the written agreement. *See Tex. Builders*, 928 S.W.2d at 481.

We therefore reject George's argument that the aerial photo cannot be considered as part of the Contract's property description.

### 2. Sufficiency of the property description

We continue our analysis in determining whether the aerial photo and the property description in Paragraph 2.A. as "House and 32 acres out of 123+/- acres TR: BLK: SURV: TEXAS & PACIFIC R.R. or as described on attached exhibit, also known as 2300 Cox Road, Millsap, TX 76066," is sufficient as a matter of law.

---

[4]Judy stated in her summary judgment affidavit, "On the same day we signed the Farm and Ranch Contract, George and I both signed an aerial photograph showing the property that would be conveyed to George in the sale."

11

George attacks the Contract's property description in piecemeal fashion. He argues that Paragraph 2.A. is insufficient because "123 +/- acres" and "House and 32 acres" are insufficiently identified; and that the aerial photo (1) does not identify the boundaries of the land to be transferred, (2) does not show where the land is located, and (3) does not show the course and distance of the purported boundaries. These arguments fail because they take the descriptive elements out of context and ignore key features of the aerial photo.

First, the identification of the "123 +/- acres" is not ambiguous. George even admits in his argument that Judy was awarded 123 acres at 2300 Cox Road in the parties' divorce. Contrary to his assertion otherwise, we may consider this parol evidence to clarify the Contract's reference to the 32 acres to be sold by Judy. *See Tex. Builders*, 928 S.W.2d at 481; *May*, 375 S.W.3d at 574. We therefore reject that portion of his argument.

In his argument that the written descriptors of "123 +/- acres" and "House and 32 acres" are insufficient, George misplaces his reliance on cases that are clearly distinguishable because they did not benefit from additional details similar to the aerial photo and the written description including the address and size of the subject property. *See Tex. Builders*, 928 S.W.2d at 482 (holding description of property in lease insufficient where it only identified a portion of property owned by lessor and provided no further identification of property to be leased); *Hereford v. Tilson*, 200 S.W.2d 985, 988–89 (Tex. 1947) (holding description of property in lease insufficient

12

to enforce purchase option where it identified land only by address and where extrinsic evidence showed it was only part of the land owned by the lessor).

This failure to see the bigger picture continues in George's attacks of the aerial photo. George argues that the property's boundaries are not identified in the aerial photo because the white-outlined area is not shaded, labeled, or otherwise designated by writing on the aerial photo as the subject property. While this may be a best practice, we disagree with his assertion that this is a fatal flaw. Only one area is outlined on the aerial photo, right in the center of the photo. In comparison, the cases that George cites as support for this piece of his argument involved leases or contracts for the sale of multiple tracts of land and with maps attached that outlined multiple tracts of land. *See U.S. Enters., Inc. v. Dauley*, 535 S.W.2d 623, 631 (Tex. 1976) (holding, in case involving sale of ten tracts of land, that map was not clear in identifying two particular tracts and land subject to sale was not sufficiently described by contract); *cf. Ardmore*, 377 S.W.3d at 59 (distinguishing contract from *Dauley* on basis that *Ardmore* map "consist[ed] only of the property subject to the lease's purchase option").[5] It is therefore a reasonable conclusion that the parties intended that the white-outlined area be the subject of the sale.

---

[5]In support of his argument, George notes that in drafting the parties' divorce decree, their attorneys included a map that was shaded and labeled to identify which portions of the 200-acre tract were to be awarded to each party. This is likewise distinguishable, as there were multiple tracts of land at issue and to be awarded to multiple parties, rather than the sale of a single tract of land as in the instant case.

13

Similarly, George's argument that the aerial photo does not show where the land is located is easily rebuffed by looking to the written description in the Contract, providing a street address of 2300 Cox Road, Millsap, TX 76066, for the property. Only one road borders the white-outlined area in the aerial photo; it is logical to conclude that this is Cox Road.

Finally, George's argument that the aerial photo does not show the course and length of the subject property's boundaries disregards the presence of a map scale at the bottom of the aerial photo. The scale provides a means of measuring the feet or meters of each boundary as it is drawn on the aerial photo, and the photo provides landmarks from which those measurements can be made—most notably, the road to the house on the property. Using the scale, for example, one can determine the distance of the length of the eastern border, as well as the location of the property's southeastern corner. The remaining borders can be similarly determined.

This is different from the cases cited by George. For instance, in *Guenther v. Amer-Tex Construction Co.*, the property subject to sale was identified solely through a map that referenced two roads, two fences (one of which bordered a park), and a utility line. 534 S.W.2d 396, 396–98 (Tex. App.—Austin 1976, no writ). The court recognized that two roads and the fence bordering the park could likely be found, but the utility line referred to was unclear; it was not identified as an electric, phone, or gas line. *Id.* at 398. And even if the utility line could be identified, the last boundary—the second fence—was not identified in any way. *Id.* Additionally, there was no way to

14

determine the intended size of the property to be conveyed or the length of its borders. *Id.* The map therefore failed to adequately define the property. *Id.; see also Smith v. Griffin*, 116 S.W.2d 1064, 1066 (Tex. [Comm'n Op.] 1938) (holding insufficient a property description that defined a corner of the subject property and declared that it should be rectangular in form but did not provide the length of any of the boundaries).

The subject property needed to be described with "reasonable certainty"; a description that identifies the general area of the land and contains information about the property's size, shape, and boundaries meets this requirement. *See Ardmore*, 377 S.W.3d at 56. Viewing the Contract's written description and aerial photo as a whole, we are able to determine the location, size, shape, and boundaries of the property George intended to purchase from Judy. We therefore hold that the trial court did not err by denying George's motion for summary judgment and overrule his first and second issues.

## III. Judy's breach-of-contract claim

In his second category of issues, George argues that the trial court erred by granting summary judgment in Judy's favor because (1) George did not default under the terms of the Contract, (2) Judy did not terminate the Contract, and (3) George did not wrongfully refuse to release the earnest money.

To succeed on her claim of breach of contract, Judy was required to show (1) the existence of a valid and enforceable contract, (2) that she performed or tendered

15

performance, (3) that George breached the Contract, and (4) that she was damaged as a result of that breach. *See, e.g.*, *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd).

We have rejected George's challenge to the enforceability of the Contract on the basis of the statute of frauds, and he has asserted no other challenge to the Contract's validity or enforceability. Viewing the Contract as a whole, we hold that the Contract is valid and enforceable.

To show that she performed her duties under the Contract, Judy produced evidence that she provided George with a commitment for title insurance, secured a survey of the property, delivered that survey to George, and obtained an owner's policy of title insurance.[6] George did not object to any of this evidence and does not complain on appeal of any failure of Judy to perform her duties under the Contract.[7] Judy's summary judgment evidence established that she performed her duties under the Contract.

---

[6]Judy provided this evidence in the form of her own affidavit, an affidavit of the real-estate agent, a business-record affidavit of the surveyor authenticating a survey of the property, and a business-record affidavit of the title company authenticating the commitment of title insurance and an owner's policy.

[7]In fact, George did not file a response to Judy's second motion for traditional summary judgment. Even so, Judy was required to establish legally sufficient grounds for summary judgment. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) (reiterating that summary judgments must stand on their own merits).

In her motion for summary judgment, Judy alleged that George breached the Contract in two ways: (1) by failing to sign a release of the earnest money within seven days of receiving the release from Judy and (2) by failing to close the sale and pay her $435,000. Even viewing the evidence in the light most favorable to George, we agree that no material fact issue exists as to whether George breached the Contract by failing to timely close as provided by the Contract's terms.

The parties do not dispute that the closing did not happen on July 6, 2015, or at any time after that. George argues that this was not a material breach of the Contract because the Contract did not state that time was of the essence, but his argument is misplaced. The plain wording of the Contract provided Judy with a remedy for George's failure to close on time, and where a contract is worded to give certain or definite meaning, we will interpret those words as a matter of law. *Coker*, 650 S.W.2d at 393. Paragraph 9.A. expressly stated, "If either party fails to close the sale by the Closing date, the non-defaulting party may exercise the remedies contained in Paragraph 15," and Paragraph 15 provided that if the buyer (George) failed to comply with the Contract, he would be in default and the seller (Judy) could terminate the Contract and receive the earnest money as liquidated damages. The plain wording of this provision established that the failure to close the sale on time was a default entitling the non-defaulting party to terminate the Contract and recover the earnest money. *See also Capcor at Kirbymain, L.L.C. v. Moody Nat'l Kirby Houston S, L.L.C.*, 509 S.W.3d 379, 390–91 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (interpreting a

clause with an identical paragraph 9.A. and holding, "As a matter of contractual terms . . . Capcor's failure to deliver good funds acceptable to the escrow agent by the last day the contract fixed for closing unequivocally permitted Moody Kirby to terminate the contract and obtain the earnest money."); *Limestone Grp., Inc. v. Sai Thong, L.L.C.*, 107 S.W.3d 793, 797 (Tex. App.—Amarillo 2003, no pet.) (defining "default" as connoting "a mere failure, omission, or breach," and "eschew[ing] attempt[s] to affix words of qualification or measure to it, such as substantial or material").

Alternatively, George argues on appeal that Judy waived any requirement of timely closing by repeatedly agreeing to postpone the closing. But George never pleaded or argued waiver in the trial court, so he has failed to preserve this argument. *See* Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1), Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). We therefore reject this argument.

In his motion for rehearing, George asserts that we neglected to address his argument that Judy failed to establish that she terminated the Contract. We disagree. Judy provided evidence that—after George defaulted by failing to close— she demanded the release of the earnest money, as permitted by paragraph 18C of the Contract and which stated, "Upon termination of this contract, either party . . . may send a release of earnest money to each party and the parties shall execute

18

counterparts of the release." Judy provided, in her summary judgment evidence, copies of letters demanding the release of the earnest money, at least one of which expressly stated, "Mr. Manor has breached the contract and is refusing to sign the Release of Earnest Money." Judy therefore established her termination of the Contract after George's default.

Finally, relying on Paragraph 18.D., George argues that in order to establish a breach, Judy was required to establish that George "wrongfully" failed or refused to sign the release. We disagree. If Judy had recovered the treble damages permitted by Paragraph 18.D., she might have been required to make that showing, but Judy did not recover those damages. Judy only recovered the $35,000 earnest money and her attorney's fees. Judy was permitted by Paragraph 15 to recover the earnest money, and by showing that George breached the Contract by failing to timely close, she was permitted to recover her attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).

Even viewed in the light most favorable to George as the nonmovant, as we are required to do, Judy established George's breach of the Contract as a matter of law. According to the unambiguous provisions of the Contract, Judy was therefore entitled to receive the $35,000 in earnest money as damages, as well as her attorney's fees. The trial court did not err by rendering summary judgment in Judy's favor, and we overrule George's fifth and sixth issues.

19

## Conclusion

Having overruled George's dispositive issues on appeal, we affirm the trial court's judgment and lift the stay previously ordered by this court.

/s/ Ruben Gonzalez
Ruben Gonzalez
Visiting Judge

Delivered:  December 31, 2019

# EXHIBIT A



Google Earth Pro

feet ————————————————— 900
meters ———————————— 600

06/19/2015   George A. Manor   Judy Manor

562

22