COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

 )
 No. 08-01-00475-CV

IN THE MATTER OF THE ESTATE OF
)


JO NELL JONES BELL, DECEASED.
)
 Appeal from

)
 

)
 County Court at Law

)


)
 of Midland County, Texas

)


)
 (TC# P-12,863)


MEMORANDUM OPINION



 This is a dispute among siblings concerning the probate of their mother's estate. At issue is
a lake house owned by the decedent, Jo Nell Jones Bell (Mrs. Bell), which was conveyed to her
daughter, Barbara Bell Saxon, and her husband. The trial court determined that the Saxons had not
paid for the property in full and entered judgment that the estate recover $55,600 plus attorney's fees. 
We affirm.

FACTUAL SUMMARY


 The property at issue abuts Lake Nasworthy in San Angelo. Although the vacation home was
owned by Mrs. Bell and her husband in fee simple, the land beneath it was leased from the City of
San Angelo for a term of forty years. Barbara's father passed away in July 1995. In February 1997,
Mrs. Bell asked Barbara to move from Oklahoma to San Angelo because the widow was no longer
able to care for the lake house from her principal residence in Midland. Particularly fond of fishing,
Mrs. Bell enjoyed the lake house and liked having family gatherings there. Although she had listed
it for sale with an asking price of $70,000, she had received an unsatisfactory offer and preferred to
keep the property. The plan was for the Saxons to rent the house, with the rental payments applied
toward the sales price if the couple chose to buy it. Since the Saxons were already considering
retirement, they moved into the lake house in March 1997. Barbara continuously maintained a room
in the house for her mother and allowed her to use the property whenever she wanted. After they
moved in, the Saxons made improvements, paid for a full termite inspection, and contracted for the
leveling of the house. On June 23, 1997, Mrs. Bell executed a Joint Tenancy Warranty Deed in favor
of the Saxons which reserved no lien. On November 2, 1998, Mrs. Bell transferred her leasehold
interest in the land to the Saxons.

 Mrs. Bell died testate on May 30, 2000. She was survived by five children: Barbara Bell
Saxon, Donna Bell Prince, Karris Bell Crawford, Newton Bell, Jr., and Lee Bell. The will executed
by Mrs. Bell on October 16, 1996 was filed for probate in June 2000 and the surviving children were
appointed as the independent co-executors of the estate.

 Mrs. Bell handled her business affairs personally and all parties agree that she was a
sophisticated business woman. She maintained all the paperwork on her properties and other
important papers at her home in Midland. Consequently, the day after the funeral, Barbara and her
siblings gathered there to coordinate the administration of her estate. In a closet by her desk, they
found a paper sack labeled "Very Important Papers." It contained a listing of the contents along with
various files: Probate of Will (presumably, that of her late husband), "Barbara & Walt Lake house
papers," the oil well on Harvard place, the sale of Germania Place, the Claire air conditioner, the
Greenwood Cemetery plot, CRP papers, and the Last Will and Testament of Jo Nell Bell. Each file
contained the appropriate documents except for the file designated as "Barbara & Walt Lake house
papers," which was empty. Barbara told her sister Donna that the file was empty because she had
paid off the house with $32,000 received in connection with her husband's disability claim. Donna
asked Barbara to produce a receipt so that she could verify that payment had been made on the
property. Barbara promised a receipt, but never produced it.

 Barbara's explanation of the missing documents was contradicted by her nephew. Ronald
Bell was at his grandmother's home the day after she died. He observed Barbara going through some
of the papers in the closet where Mrs. Bell kept her sack of important documents. She removed four
pieces of paper out of a folder, put them under her arm, and walked out of the house. Barbara denied
removing any papers.

 Two weeks after their first inspection of the house, several of the siblings returned. They
found an unsigned copy of a contract on the lake house in their mother's desk drawer. This
document, entitled "Contract of Lease and Purchase," was dated March 1, 1997, listed the parties
as Jo Nell Bell, Seller, and Walter E. and Barbara M. Saxon, Buyers, and a sales price of $55,000. 
The contract provided for a down payment of $15,000 within two years and the balance of $40,000
would be carried at 8.5 percent interest amortized over fifteen years. Monthly payments of $393.90
were to begin March 1, 1998. A total of $9,837.50 was paid from 1998 to mid-2000. As of July 1,
2001, the balance due was $56,800, including interest.

 Barbara claimed that the actual terms of the sale were different. She described an oral
agreement with her mother whereby she would pay $300 per month in rent for the first year. After
the first year of rental payments, Mrs. Bell sold Barbara the house for $35,000, with $1,000 down
and a promissory note for $34,000, payable over a period of ten years at 7 percent interest. Payments
were set at $393.50 a month. Barbara said she made these monthly payments for twenty-five months
until her mother's death. She offered different explanations for the balance due under the contract. 
As we have mentioned, she first told Donna that she and her husband had received $32,000 from a
disability claim and they had used the money to pay off the property. A week or so later, Barbara
told Donna that Mrs. Bell had forgiven all debt upon her death. After another two weeks, Barbara
claimed she had a clear deed to the house and warned her siblings not to include it on the estate
inventory. Then she admitted to Donna that there was never a note on the lake house and she had
not paid anything for the property, a statement she later denied. At trial, in yet another story, Barbara
testified she and her husband were paying $300 per month in rent for one year. They agreed to
assume the remaining payments on a small shopping center Mrs. Bell was purchasing in Martin
County. After the stores were paid off, Barbara would owe nothing more. The payments on the
stores were $400 per month, but Mrs. Bell asked that the check be written for $393.50 so that she
would recognize the check when it arrived. Interestingly enough, that was the payment required by
the unsigned copy of the contract. Barbara did not tell Donna about this transaction, because her
sister had no need to know about her business dealings.

 Donna Prince and Newton Bell, Jr., two of the independent co-executors of the estate, filed
a motion in the county court by which they sought judgment against Barbara for the amounts due
under the contract. The trial court awarded judgment for the estate in the amount of $55,600. The
estate was also awarded attorney's fees in the amount of $3,500.

STATUTE OF FRAUDS


 In her first issue for review, Barbara complains that the trial court enforced an unsigned,
unrecorded contract creating a mortgage in violation of the Statute of Frauds. Whether a contract
falls within the statute of frauds is a question of law. Bratcher v. Dozier, 162 Tex. 319, 321, 346
S.W.2d 795, 796 (1961); Choi v. McKenzie, 975 S.W.2d 740, 742 (Tex.App.--Corpus Christi 1998,
pet. denied).

 The Statute of Frauds is codified in Chapter 26 of the Texas Business and Commerce Code
and provides, in pertinent part, that a contract for the sale of real estate "is not enforceable unless the
promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be
charged with the promise or agreement or by someone lawfully authorized to sign for him."
Tex.Bus.&Com.Code Ann. § 26.01 (Vernon 2002); Fandey v. Lee, 880 S.W.2d 164, 170
(Tex.App.--El Paso 1994, writ denied). Where an essential term is open for future negotiation, there
is no binding contract. Parol evidence may be used to explain or clarify the written agreement, but
not to supply the essential terms. Texas Builders v. Keller, 928 S.W.2d 479, 481-82 (Tex. 1996);
Morrow v. Shotwell, 477 S.W.2d 538, 541 (Tex. 1972). However, where a written, signed contract
is lost or destroyed, its existence and terms may be shown by clear and convincing parol evidence. 
Bank of America, N.A. v. Haag, 37 S.W.3d 55, 58 (Tex.App.--San Antonio 2000, no pet.). Other
evidence of the content is permissible if all originals are lost or have been destroyed. Tex.R.Evid.
1004. A duplicate is admissible to the same extent as an original unless a question is raised as to its
authenticity or under the circumstances it would be unfair to admit the duplicate. Tex.R.Evid. 1003. 
The unsigned contract was admitted into evidence to establish its existence and its terms, an option
accorded to the trial court in light of inferences which could be drawn from the testimony that
Barbara removed the original paperwork. The only objection lodged at trial was a hearsay objection. 
We conclude that the trial court properly considered parole evidence of the existence of a contract
and its terms. Finding no violation of the Statute of Frauds, we overrule Issue One.

VARIANCE OF JUDGMENT


 In her second issue, Barbara complains of a variance between the trial court's oral
pronouncement of its ruling and the signed judgment. On the record, the court stated:

 The Court will not set aside the conveyance of the property; however, I am going to
order the recovery of property by the estate, and that recovery amount to be the
$56,800 less $1,200 that the Court is applying the $1,200 in payments. So coming
up with $55,600 that the estate will recover from Mrs. Saxon. The Court will order,
then, that the assets be distributed as per the inventory that we have on file from Mr.
Lindemood's clients, that that be distributed to the beneficiaries other than Mrs. 
Saxon in an amount equal to that $55,600. Once that initial distribution is made,
then, then to distribute all remaining assets on a pro rata basis among all
beneficiaries. I am going to award attorney's fees on behalf of Mr. Lindemood's
clients in the amount of $3,500.


The judgment provides:

 IT IS FURTHER ORDERED that the Estate of Jo Nell Bell, Deceased, have and
recover judgment against BARBARA SAXON, Individually, for $55,600, plus
reasonable and necessary attorneys' fees of $3,500.00, incurred by DONNA PRINCE
and NEWTON BELL. 


As we perceive no variance, we find no error. Consequently, we need not address Barbara's
argument that the court's statements on the record constituted a rendition of judgment. 

 Secondarily, Barbara complains that she was not given full credit for the monthly payments
which she had made. She refers to the trial court's comment that he intended to do so:

 I don't know if my math is right. I am giving credit to all those payments and an
additional $1,200 that I am going to refer to as rent payments for purpose of the
testimony. So whatever that figure comes up with, I am giving that amount. 


Barbara then contends that she was entitled to credit in the amount of $11,025, representing twenty-five monthly payments of $393.50 plus the additional $1,200 which the court referenced. (1) She
concludes that judgment should be rendered for $45,762.50, rather than $55,600. This argument is
not one which may be addressed by complaining of a variance. Both the oral pronouncement and
the written judgment reflect the trial court's intent that Barbara be given full credit for her payments. 
If we misunderstand her stated issue and she intends to complain that the amount of offset awarded
is against the great weight and preponderance of the evidence, we must disagree. Donna Prince
clearly testified that the outstanding balance on the contract was $56,800, including interest. In
computing the amounts due, Donna must necessarily have calculated the payments made. Barbara
did not challenge her computation on the balance due or question whether she was given full credit
for all payments made. Nor did she offer her own opinion of the amounts due and owing if the court
determined the contract to be valid and enforceable. Consequently, we overrule Issue Two and
affirm the judgment of the trial court below.



October 2, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.
1. By our computation, the figure would be $11,037.50. The additional $1,200 credit appears to represent four
rental payments of $300 which were paid from the time the Saxons moved into the lake house in March 1997 until Mrs.
Bell executed the warranty deed in late June of that year.