Opinion issued October 1, 2009












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00660-CV






ANNA MARIE NGUYEN, Appellant


V.


ALEX YOVAN AND PHILIP YOVAN, Appellees






On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 06CV985






O P I N I O N


 In this suit on a contract for deed, appellant, Anna Marie Nguyen appeals the
trial court's take-nothing judgment in favor of the appellees, Alex Yovan and Philip
Yovan. In two issues, Nguyen argues that (1) the contract is not barred by the statute
of frauds and (2) the evidence supports numerous statutory violations.

 We reverse the judgment of the trial court and remand for proceedings
consistent with this opinion.

Background


 In early 2002, Nguyen and Alex Yovan met at 15817 Highway 6 in Santa Fe,
Texas (the "property"), the site of land and a home for sale by Alex Yovan. Nguyen
learned that the property was originally owned by one of Alex's sons, Steven Yovan,
who later deeded it to another of Alex's sons, Phillip Yovan. Phillip deeded the
property to Alex.

 Nguyen decided to purchase the property, and Donna Yovan, Alex's wife,
drafted the contract for deed and prepared an amortization schedule. The contract
was originally in the names of Nguyen's children, who were to live in the house while
they went to college. In August 2003, the contract was revised to substitute Nguyen
for her children, but it was otherwise identical to the first contract. 

 The contract for deed between Alex and Nguyen provided for the purchase of
the land and home at 15817 Hwy 6, Santa Fe, TX. The property was further
identified as "ABST 613 Page 6 Lots 5 thru 7 HIGHWAY 6 UNRECORDED SUB." 
Nguyen agreed to purchase the property from Alex for $37,000 at 10% interest for 10
years, making a $5,000 down payment and paying $422.88 a month. The contract for
deed stated, "It shall be the responsibility of the sellers to obtain and maintain
insurance on the house" and to "pay property taxes when they become due." 
However, it also stated that "the buyers [Nguyen] will be responsible for April-Dec.
or 75% of the taxes" for 2002. It then stated, "For the year 2003 and subsequent
years, all taxes are the responsibility of the buyer. Tax receipt copies will be
submitted on or before the first of February each year." Finally, the contract
provided, "Failure to maintain insurance or failure to pay taxes as they become due
will revoke this contract and sellers [sic] will vacate the property." 

 After receiving the contract for deed, Nguyen gave Alex a $5,000 cashier's
check, and Nguyen's son began to remodel the house by replacing the floor,
refurbishing the inside, repairing the ceiling, and replacing a window. Nguyen
testified that she spent approximately $5,000 on these repairs. Nguyen lived in the
house in 2003; she also had renters in the house at one time; and her daughter lived
in the house.

 Nguyen timely made payments on the contract for deed. In 2005, disputes
arose regarding insurance and taxes. Specifically, Alex wrote a July 27, 2005 letter
to Nguyen addressing the payment of taxes for 2003 and 2004, stating that Alex had
paid the taxes and that he must be reimbursed immediately. Alex wrote another letter
on August 2, 2005, stating that the 2003 and 2004 taxes were due in the amount of
$2,853.24. Alex asked that Nguyen call him to inform him how the taxes would be
handled, and he wrote that a failure to pay the taxes would revoke the contract. 
Nguyen may have paid the taxes late, but she eventually paid all of the taxes.

 In the middle of 2005, Nguyen saw a surveyor to determine where her
boundaries were so that she could install a storage shed. When she went to the
surveyor's office, she obtained a copy of a deed from Steven Yovan to Phillip Yovan
referencing a lien in favor of Texas First Bank. Surprised by the lien, Nguyen talked
to Alex to make sure that she was making payments on the right property, and Alex
tried to explain how he had acquired the property. He denied that liens existed on the
property. Alex also gave "stipulations" to Nguyen, which were notarized documents
explaining the transfer of ownership from Philip to Alex. These stipulations stated
that, to Alex's knowledge, there were no liens on the property. However, Nguyen
later learned that the property had a number of liens on it: a lien from Texas First
Bank, two federal tax liens for failing to pay taxes, and a Builder's and Mechanic's
lien. These liens were not mentioned in the contract for deed Nguyen signed, and she
was not aware of their existence at the time she signed the contract for deed.

 In 2006, Nguyen talked to Philip about paying off the purchase price on the
contract for deed. Philip said he was going through a divorce so they should wait a
few months. Philip testified that he never heard about it again, although Nguyen
testified that she called Philip and he did not return her calls. Even though she did
not pay off the contract for deed, Nguyen continued to make payments on it.

 The contract for deed specified that the sellers had the "responsibility. . . to
obtain and maintain insurance on the house." However, Donna, Alex Yovan's wife,
testified that she and Nguyen had an "agreement among friends" that consisted of
Nguyen's making payments on the note in a timely fashion and Nguyen's providing
insurance, including homeowner's and windstorm insurance. Donna further testified
that, in April 2006, she verbally told Nguyen to pay the property taxes.

 The disputes over insurance and payment of taxes culminated in a letter written
by Phillip on April 19, 2006, stating that he had not received proof of insurance and
that property taxes had not been paid. The letter also stated, "[T]he house was not
boarded up or protected in any way during the hurricane and the front roof shows
damage from the wind. Verification of windstorm insurance needs to be provided,
as well." The letter stated that property taxes for 2005 needed to be paid and that
Nguyen should provide a check payable to the taxing authorities or pay the taxing
authorities directly. Nguyen testified that she made payments every month and that
she paid when she was asked to. She recalled that in 2005, she was asked to pay the
2003 taxes but she had never been asked before. She understood that Alex would pay
for the taxes and then ask for reimbursement from her. She testified that she provided
homeowners insurance to the Yovans and that she had never been asked to provide
windstorm insurance. Alex agreed that the April 2006 letter was the first time they
had specifically mentioned windstorm insurance. In response to this letter, Nguyen
paid the school taxes, but she testified that she did not know about the county taxes. 
After she was notified by Donna, Nguyen paid the county taxes as well. 

 On August 3, 2006, Nguyen received a letter from Philip stating that her
contract was null and void and that the contract was terminated because "the house
was not boarded up or protected in any way during the hurricane and the front roof
shows damage from the wind." The letter also stated, "The property taxes for 2005
were to be paid by January 31, 2006. These payments have been requested several
times, and, as of the end of July, they are still due. This violation of the contract has
occurred every year of this contract." Nguyen testified that, after filing suit, she paid
the outstanding property taxes but she did not fix the roof after the hurricane. As of
the day of trial, Nguyen testified that she still owed $19,646.26 on the contract for
deed, or 60% of the original $37,000 purchase price. 

 On August 30, 2006, Nguyen sued Alex and Philip on the contract for deed,
seeking a declaratory judgment as to her rights under the contract, title to the
property, possession, and specific performance of the Yovans' obligation to convey
title. Nguyen also alleged the Yovans had violated various statutes, (1) entitling her to
damages for breach of contract, violations of the Texas Deceptive Trade Practices
Act, (2) and common law fraud. Nguyen also sought attorney's fees. In their third
amended original answer, the Yovans generally denied the allegations and answered
that any contract between themselves and Nguyen was void because the property
description was too vague. 

 Following a trial to the bench, the trial court rendered a take-nothing judgment
in favor of the Yovans. The trial court issued findings of fact and conclusions of law. 
In pertinent part, the trial court's findings stated:

 10. The property description listed in the 2002 Agreement and
the 2003 Agreement does not furnish within itself, or by
reference to some other existing writing, the means or data
by which the property to be conveyed may be identified
with reasonable certainty.


 13. Anna Marie Nguyen and her children have not made
permanent and valuable improvements to the property.


 14. Anna Marie Nguyen and her children have not timely paid
the real estate taxes on the property.


 15. Anna Marie Nguyen and her children have not
continuously since 2002 maintained insurance on the
property.

 

 24. Alex Yovan and Philip Yovan in good faith furnished
Anna Marie Nguyen with the information required by
statute.


 25. Anna Marie Nguyen suffered no damage by Alex Yovan or 
Phillip Yovan's failure to provide her with "annual
accountings" each year.


 26. Alex Yovan did not engage in any false, misleading or
deceptive act that Anna Marie Nguyen relied on to her
detriment and that was a producing cause of damages to
Anna Marie Nguyen.


 27. Philip Yovan did not engage in any false, misleading or
deceptive act that Anna Marie Nguyen relied on to her
detriment and that was a producing cause of damages to
Anna Marie Nguyen.

 

 In pertinent part, the trial court made the following conclusions of law:

 1. The agreements which are the subject of this suit are barred
by the Statute of Frauds.


 2. Alex Yovan and Philip Yovan were not required to abide
by the provisions of Sections 5.061, et seq. of the Texas
Property Code. If they were required to abide by such
provisions, they made a good faith effort to abide by them.

 

 3. Philip Yovan gave proper notice to Anna Marie Nguyen of
the termination of the agreements.


Statute of Frauds


 In her first issue, Nguyen argues that the trial court improperly concluded that
the contract violated the statute of frauds.

 The statute of frauds requires that all conveyances of real property be in writing
and signed by the party to be charged. See Tex. Bus. & Com. Code Ann.
§ 26.01(b)(4) (Vernon 2009). Whether a contract falls within the statute of frauds is
a question of law. Iacono v. Lyons, 16 S.W.3d 92, 94 (Tex. App.--Houston [1st
Dist.] 2000, no pet.). We review the trial court's conclusions of law de novo. Smith
v. Smith, 22 S.W.3d 140, 149 (Tex. App.--Houston [14th Dist.] 2000, no pet.). When
performing a de novo review, we exercise our own judgment and redetermine each
legal issue. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998). We will uphold
conclusions of law on appeal if the judgment can be sustained on any legal theory the
evidence supports. Waggoner v. Morrow, 932 S.W.2d 627, 631 (Tex.
App.--Houston [14th Dist.] 1996, no writ). Incorrect conclusions of law do not
require reversal if the controlling findings of fact support the judgment under a
correct legal theory. Id.

 For a land sales contract to meet the requirements of the statute of frauds, it
must furnish within itself or by reference to another existing writing the means or data
to identify the particular land with reasonable certainty. See Pick v. Bartel, 659
S.W.2d 636, 637 (Tex. 1983) (concluding description of land not certain when "No
city, county or state is mentioned in connection with its location. No lot or block
number is given, nor is there any indication as to the amount of land. No description
by any particular name appears."); Jones v. Kelley, 614 S.W.2d 95, 99 (Tex. 1981)
(concluding that property description satisfied statue of frauds when metes and
bounds description was in evidence, and plat showed location of 36 acres within
larger 116 acre tract and contained calls for course and distance of 36 acres); Wilson
v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152 (1945) (property description deficient
when no city, county or state was mentioned and there was no lot or block number
and no indication of amount of land). 

 The purpose of a description in a written conveyance is not to identify the land,
but to afford a means of identification. Jones, 614 S.W.2d at 99-100. "A writing
need not contain a metes and bounds property description to be enforceable." Texas
Builders v. Keller, 928 S.W.2d 479, 481 (Tex. 1996). If enough appears in the
description so that a person familiar with the area can locate the premises with
reasonable certainty, it is sufficient to satisfy the statute of frauds. Gates v. Asher,
154 Tex. 538, 280 S.W.2d 247, 248-49 (1955). 

 If a conveyance of an interest in real property does not sufficiently describe the
land to be conveyed, it is void and unenforceable under the statute of frauds. See
Republic Nat'l Bank of Dallas v. Stetson, 390 S.W.2d 257, 261 (Tex. 1965). Such a
contract, deed, or conveyance will not support an action for specific performance or
a suit for damages for a breach of contract. Wilson, 188 S.W.2d at 152; Reiland v.
Patrick Thomas Props., Inc., 213 S.W.3d 431, 437 (Tex. App.--Houston [1st Dist.]
2006, pet. denied). 

 Here, the contract for deed provides,

This contract between the seller, Alex Yovan and the buyer, Anna Marie
Nguyen, is for the purchase of the land and house at:


 15817 Hwy 6, Santa Fe, Tx. The property description is as
follows:


 ABST 613 PAGE 6 LOTS 5 thru 7 HIGHWAY 6 

 UNRECORDED SUB

 SANTA FE, TEXAS 0.384 ACRES

 PARCEL #4005-0000-0005-000


Anna Marie Nguyen, buyer, agrees to purchase this property from Alex
Yovan, seller, for $37,000.00 at 10% interest for 10 years. There will
be a down payment of $5,000.00. The payments of $422.88 per month
will begin on May 1, 2002 and will continue on the first day of each
month thereafter for one hundred twenty payments.


A late fee of $25.00 will be added to any payment that is 5 days late. If
the sellers fail to make two payments, this contract will be considered
revoked and the sellers will vacate the property.


It shall be the responsibility of the sellers to

 

 obtain and maintain insurance on the house [Buyers will submit
a copy of the insurance.]

 

 pay property taxes when they become due

 [For the year 2002 the sellers will be responsible for Jan.-March
or 25% of the taxes and the buyers will be responsible for April-Dec. Or 75% of the taxes. For the year 2003 and subsequent
years, all taxes are the responsibility of the buyer. Tax receipt
copies will be submitted on or before the first of February each
year.]


 Failure to maintain insurance or failure to pay taxes as they
become due will revoke this contract and sellers will vacate the
property.


This contract is solely between Anna Marie Nguyen and Alex Yovan
and cannot be transferred in any way to any other parties. There is no
penalty for paying this contract off early. Here, the contract contains a complete street address, 15817 Hwy 6, Santa Fe,
Tx. See Apex Financial Corp. v. Garza, 155 S.W.3d 230, 237 (Tex. App.--Dallas
2004, pet. denied) ("We have held that a street address or a commonly-known name
for property may be sufficient property description if there is no confusion."). 
Neither party argues that there has been any confusion about the exact property that
was conveyed by any of the deeds. In addition, the contract refers to another existing
writing which has the means to identify the land with particular certainty. 
Specifically, the contract describes the land conveyed as the same land described in
abstract 613, page 6, lots 5 through 7, Highway 6, unrecorded subdivision, Santa Fe,
TX, 0.384 acres, parcel 4005-0000-0005-000.

 Finally, Dale Hardy, the Yovan's expert and a professional land surveyor,
looked at the 2002 and 2003 contracts (3) and agreed that they had the same property
description. (4) He agreed that the address allowed him to drive to the location
physically, "but it would not provide the specifics in terms of dimensions in terms of
width, length, depth, bearing, things of that sort." He stated that the contract's
reference to "abstract 613 page 6" is a reference to "an IGN Railroad Company
survey," that would allow the location of the property in the county to be determined
and that the reference to "lots 5 through 7 Highway 6, unrecorded sub" meant that the
property had been divided and lot numbers assigned to it, but there was no direct link
to a recorded public plat. Hardy further testified that the parcel number in the
contract for deed was " a tax account number maintained by the GCAD or Galveston
Central Appraisal District." Then the following exchange occurred:


 Q. Does GCAD maintain some type of map or plat or something like that? 
Do they have abstract 613 in their file?


 A. Actually they do, yes, sir.


 Q. And so using this partial number are you able to identify with certainty
the exact property to be conveyed?


 A. Using that parcel number and cross referencing back to their map you
can identify a piece of property. If I may continue again, even with that
information the fact that it's referring back to an unrecorded subdivision
means there's no map to go verify the GCAD information against. 
GCAD's purpose is to identify a piece of property, a taxpayer, so they
can collect taxes on it. It's not, they don't have a responsibility to
precisely define the property in terms of location or in terms of
dimensions. They will be generally accurate but certainly not definitive.


 Hardy agreed that he could use the tax records to identify the property so that
taxes could be collected on it, and he testified that the contract for deed referenced
an IGN Railroad Company survey that had been divided into numbered lots with an
address to which he could drive. Although Hardy testified that the description of the
property would not be exact, a contract for deed need only have the "means or data
by which the land to be conveyed may be identified with reasonable certainty." See
Morrow v. Shotwell, 477 S.W.2d 538 539 (Tex. 1972). The law does not require a
metes and bounds description or a plat in a recorded subdivision in order for land to
be conveyed by a contract for deed. See Keller, 928 S.W.2d at 481. 

 Here, the contract for deed provides the size of the property, an address, a lot
number in an unrecorded subdivision, an abstract number referencing a railroad
survey map of the unrecorded subdivision locating it in the county, and a tax
identification number for the parcel conveyed coordinated with the map. The parties
were able to drive to the house and lot and there was no confusion as to the property
conveyed by the contract for deed. We conclude that the evidence presented meets
the standard of reasonable certainty. Accordingly, we hold that the contract satisfies
the statute of frauds as a matter of law.

 We sustain Nguyen's first issue.

Property Code Violations


 In her second issue, Nguyen argues that the evidence is legally and factually
insufficient to support the trial court's findings regarding statutory violations of the
Texas Property Code. Specifically, Nguyen contends that the Yovans violated
sections 5.063, 5.064, and 5.077 of the Texas Property Code. (5) Violations of these
sections of the Texas Property Code entitle a consumer to damages under the DTPA.

A. Standard of Review

 In an appeal of a judgment rendered after a bench trial, the trial court's findings
of fact have the same weight as a jury's verdict, and we review the legal and factual
sufficiency of the evidence used to support them just as we would review a jury's
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80
S.W.3d 669, 673 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). When
challenged, a trial court's findings of fact are not conclusive if, as in the present case,
there is a complete reporter's record. In re K.R.P., 80 S.W.3d at 673; Amador v.
Berrospe, 961 S.W.2d 205, 207 (Tex. App.--Houston [1st Dist.] 1996, writ denied). 
 "When a party attacks the legal sufficiency of an adverse finding on an issue
on which she has the burden of proof, she must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the issue." Dow
Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (citing Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)). In reviewing the legal sufficiency of the
trial court's finding, we must "examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary." Id. If there is no evidence
supporting the finding of the trial court, then we must "examine the entire record to
determine if the contrary proposition is established as a matter of law." Id. We will
sustain the legal sufficiency challenge "only if the contrary proposition is
conclusively established." Id. (citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983)).

 "When a party attacks the factual sufficiency of an adverse finding on an issue
on which she has the burden of proof, she must demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the evidence." Id.
at 242. We must "consider and weigh all of the evidence," and we "can set aside a
verdict only if the evidence is so weak or if the finding is so against the great weight
and preponderance of the evidence that it is clearly wrong and unjust." Id.

 The trial court held that "Alex Yovan and Philip Yovan were not required to
abide by the provisions of Section 5.061, et seq. of the Texas Property Code. If they
were required to abide by such provisions, they made a good faith effort to abide by
them." The trial court also held that Nguyen was "not entitled to recover the
'liquidated damages' set out in the Texas Property Code." In support of its holding,
the trial court found that Alex and Philip had in good faith furnished Nguyen the
information required by statute and that Nguyen had suffered no damage by Alex's
and Philip's failure to provide her with annual accountings each year.

B. Applicability of the Texas Property Code

 Nguyen argues that the sections of the Texas Property Code cited above apply
to her dealings with the Yovans. Section 5.062 provides, 

 (a) This subchapter applies only to a transaction involving an
executory contract for conveyance of real property used or to be
used as the purchaser's residence or as the residence of a person
related to the purchaser within the second degree by
consanguinity or affinity, as determined under Chapter 573,
Government Code. For purposes of this subchapter, and only for
the purposes of this subchapter:


 (1) a lot measuring one acre or less is presumed
to be residential property; 


Tex. Prop. Code Ann. § 5.062 (Vernon Supp. 2008).

 The undisputed evidence shows that the parties entered into an executory
contract, or contract for deed, and that the property initially served as the residence
for Nguyen's daughter and later Nguyen. Moreover, the contract describes the
property as less than one acre, so that the property is presumed to be residential
property. See id. § 5.062(a)(1). On appeal, the appellees do not provide any
argument or evidence in support of the trial court's conclusion that the appellees did
not need to comply with the statutory sections. We hold that the trial court erred in
concluding that Chapter 5 of the Texas Property Code does not apply.

C. Section 5.077

 The trial court found, "Alex Yovan and Philip Yovan in good faith furnished
Anna Marie Nguyen with the information required by statute," and, "Anna Marie
Nguyen suffered no damage by Alex Yovan or Philip Yovan's failure to provide her
with 'annual accountings' each year." Nguyen challenges the legal and factual
sufficiency of these findings, arguing that the Yovans failed to comply with section
5.077 of the Texas Property Code. See Tex. Prop. Code Ann. § 5.077 (Vernon
Supp. 2008).

 Section 5.077 provides that "the seller shall provide the purchaser with an
annual statement in January of each year for the term of the executory contract." Id.
§ 5.077(a). The accounting statement must include: 

(1) the amount paid under the contract; 


(2) the remaining amount owed under the contract; 


(3) the number of payments remaining under the contract; 


(4) the amounts paid to taxing authorities on the purchaser's behalf if
collected by the seller;


(5) the amounts paid to insure the property on the purchaser's behalf if
collected by the seller; 


(6) if the property has been damaged and the seller has received
insurance proceeds, an accounting of the proceeds applied to the
property; and 


(7) if the seller has changed insurance coverage, a legible copy of the
current policy, binder, or other evidence that satisfies the requirements
of section 5.070(a)(2).


Id. § 5.077(b)(1)-(7). A seller who conducts less than two transactions in a 12-month
period under section 5.077 and who fails to comply with subsection (a) is liable to the
purchaser for "(1) liquidated damages in the amount of $100 for each annual
statement the seller fails to provide to the purchaser within the time required by
Subsection (a); and (2) reasonable attorney's fees." Id. § 5.077(c)(1)-(2). A seller
who conducts two or more transactions in a 12-month period and who fails to comply
with Subsection (a) is liable to the purchaser for "(1) liquidated damages in the
amount of $250 a day for each day after January 31 that the seller fails to provide the
purchaser with the statement, but not to exceed the fair market value of the property;
and (2) reasonable attorney's fees." Id. § 5.077(d)(1)-(2).

 To succeed on her legal-sufficiency challenge, Nguyen had to establish, as a
matter of law, all vital facts in support of this issue. See Francis, 46 S.W.3d at 241. 
The evidence shows that the Yovans did not give annual statements to Nguyen with
the required information. On appeal, the Yovans do not cite to any evidence that they
complied with this statutory section in good faith. The Yovans do argue that Nguyen
did not "meet her evidentiary burden in establishing Alex Yovan and Phillip Yovan's
actions were the proximate or producing cause of damages to her." However, this
section of the Property Code does not require a purchaser to prove actual harm or
injury to recover statutory damages. See Flores v. Millennium Interests, Ltd., 185
S.W.3d 427, 434 (Tex. 2005) (characterizing liquidated damages of section 5.077 as
penalty that does not require proof of actual harm for recovery and stating that "to
conclude that actual damages are a predicate to recovery under [section 5.077] would
belie our conclusion that the liquidated damages provision is, in fact, punitive rather
than compensatory"). We have not been directed to any evidence showing that the
Yovans complied with section 5.077 in good faith. Accordingly, we conclude that
Nguyen has demonstrated, as a matter of law, that the Yovans failed to comply with
section 5.077. (6)

 We sustain Nguyen's second issue on appeal as it relates to section 5.077.

D. Sections 5.063 and 5.064

 Also in her second issue, Nguyen argues that the Yovans violated sections
5.063 and 5.064 of the Texas Property Code. 

 Section 5.064, entitled "Seller's Remedies on Default," provides, 

A seller may enforce the remedy of rescission or of forfeiture and
acceleration against a purchaser in default under an executory contract
for conveyance of real property only if:

 

 (1) the seller notifies the purchaser of:

 

 (A) the seller's intent to enforce a remedy under this
section; and


 (B) the purchaser's right to cure the default within the
30-day period described by Section 5.065;


 (2) the purchaser fails to cure the default within the 30-day
period described by Section 5.065; and


 (3) Section 5.066 does not apply. (7) 


Tex. Prop. Code Ann. § 5.064 (Vernon 2004).

 Section 5.063, entitled "Notice," provides,

(a) Notice under Section 5.064 must be in writing and must be
delivered by registered or certified mail, return receipt requested. 
The notice must be conspicuous and printed in 14-point boldface
type or 14-point uppercase typewritten letters, and must include
on a separate page the statement:


YOU ARE NOT COMPLYING WITH THE TERMS OF
THE CONTRACT TO BUY YOUR PROPERTY. 
UNLESS YOU TAKE THE ACTION SPECIFIED IN
THIS NOTICE BY (date) THE SELLER HAS THE
RIGHT TO TAKE POSSESSION OF YOUR PROPERTY.


NOTICE



(b) The notice must also:


 (1) identify and explain the remedy the seller intends to enforce;


 (2) if the purchaser has failed to make a timely payment, specify:


 (A) the delinquent amount, itemized into principal and
interest;


 (B) any additional charges claimed, such as late charges
or attorney's fees; and

 

 (C) the period to which the delinquency and additional
charges relate; and


 (3) if the purchaser has failed to comply with a term of the
contract, identify the term violated and the action required
to cure the violation.


(c) Notice by mail is given when it is mailed to the purchaser's
residence or place of business. The affidavit of a person
knowledgeable of the facts to the effect that notice was given is
prima facie evidence of notice in an action involving a subsequent
bona fide purchaser for value if the purchaser is not in possession
of the real property and if the stated time to avoid the forfeiture
has expired. A bona fide subsequent purchaser for value who
relies upon the affidavit under this subsection shall take title free
and clear of the contract.


Tex. Prop. Code Ann. § 5.063 (Vernon 2004).

 The Yovans testified that they did not send a letter in compliance with these
two statutory sections. We have not been directed to any evidence that the Yovans
attempted in good faith to comply with sections 5.063 and 5.064. Accordingly, we
conclude that there is no evidence to support the trial court's findings that Alex and
Philip Yovan "made a good faith effort to abide by" sections 5.063 and 5.064 and that
"Philip Yovan gave proper notice to Anna Marie Nguyen of the termination of the
agreements." 

 We sustain Nguyen's second issue as it relates to sections 5.063 and 5.064.

 The trial court's findings of fact and conclusions of law demonstrate that the
trial court applied erroneous theories of law, and the expressed findings made by the
trial court do not provide the information we need to provide Nguyen with the relief
that she requested--a declaration of her rights under the contract and the damages to
which she is entitled under section 5.077 of the Texas Property Code.

 When the trial court has made findings of fact and conclusions of law relevant
to an erroneous interpretation of law, but did not make findings that would control
the case under a correct legal interpretation, we reverse and remand the case for
further proceedings. See Tex. R. App. P. 43.3 ("When reversing a trial court's
judgment, the court must render the judgment that the trial court should have
rendered, except when . . . a remand is necessary for further proceedings [or] the
interests of justice require a remand for another trial."); Jones v. Smith, No. 14-08-00639-CV, 2009 WL 2013765, at *4-5 (Tex. App.--Houston [14th Dist.] July 14,
2009, no pet.).

Conclusion

 In sum, we hold that the contract for deed did not violate the statute of frauds
and that the Yovans did not make a good faith effort to abide by statutory sections
5.063, 5.064, and 5.077 of the Texas Property Code. Therefore, we reverse the
judgment of the trial court and remand for further proceedings consistent with this
opinion.




 Evelyn V. Keyes

 Justice 


Panel consists of Justices Jennings, Keyes, and Higley.
1. See Tex. Prop. Code Ann. §§ 5.063-5.065 (Vernon 2004), § 5.077 (Vernon Supp.
2008), § 5.079 (Vernon 2004). 
2. See Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2008), § 27.01 (Vernon
2009).
3. The 2002 contract is the contract in the name of Nguyen's children while the 2003
contract is the contract in Nguyen's name.
4. Nguyen's counsel stipulated to Hardy's qualifications as an expert surveyor. 
5. In her appellate brief, Nguyen also argues that the Yovans violated sections 5.066,
5.069, 5.084, and 5.085 of the Texas Property Code. However, we do not consider
Nguyen's arguments on these grounds because they were not raised in her pleadings
in the trial court, nor were they tried by consent. See Dreyer v. Greene, 871 S.W.2d
697, 698 (Tex. 1993) ("As a rule, a claim . . . must have been asserted in the trial court
in order to be raised on appeal."); see also Tex. R. Civ. P. 301 (judgment shall
conform to the pleadings).
6. When a seller fails to comply with subsection 5.077(a), he is liable to the purchaser
for liquidated damages. See Tex. Prop. Code Ann. § 5.077(c)-(d). While the record
demonstrates that the Yovans failed to comply with section 5.077(a), it does not
provide the information necessary to determine the number of transactions the Yovans
conduct in a 12-month period. Therefore, we cannot determine which measure of
liquidated damages applies to this case.
7. Section 5.066 provides that, for a purchaser who has defaulted after paying 40 percent
or more of the amount due or the equivalent of 48 monthly payments, the seller has
the power to sell the purchaser's interest, but may not enforce the remedy of
rescission or of forfeiture and acceleration. See Tex. Prop. Code Ann. § 5.066
(Vernon 2004). At a trustee's sale, the seller will convey fee simple title to the new
purchaser. Id. If the proceeds from the sale exceed the debt under the executory
contract, the seller will disburse the excess funds to the purchaser who defaulted on
the executory contract. If the proceeds are insufficient, the seller may recover the
resulting deficiency under other sections of the Property Code. Id.